## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| WILDCAT LICENSING LLC, | |
| *Plaintiff*, | |
| | CASE NO. 6:23-cv-00446 |
| v. | |
| | **JURY TRIAL DEMANDED** |
| AUTEL INTELLIGENT TECHHNOLOGY CO., LTD. and AUTEL ROBOTICS USA, LLC, | |
| *Defendants.* | |

## ORIGINAL COMPLAINT

Plaintiff Wildcat Licensing LLC ("Plaintiff" or "Wildcat Licensing"), by and through its attorneys, file its Original Complaint against Autel Intelligent Technology Co., Ltd. and Autel Robotics USA, LLC (collectively, "Autel" or "Defendants"), and demanding trial by jury, hereby alleges as follows:

### I.  NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendants' unauthorized use, sale, and offer to sell in the United States of products, methods, processes, services and/or systems that infringe Wildcat Licensing's United States patents, as described herein.

2.      Defendants manufacture, provide, use, sell, offer for sale, import, and/or distribute infringing products and services, and encourage others to use its products and services in an infringing manner, including their customers, as set forth herein.

3.      Wildcat Licensing seeks past damages and prejudgment and post-judgment interest for Defendants' past infringement of the Wildcat Licensing Patents, as defined below.

## II.  PARTIES

4.      Plaintiff Wildcat Licensing LLC is a limited liability company organized and existing under the laws of the State of Illinois.

5.      On information and belief, Defendant Autel Intelligent Technology Co., Ltd. is a company organized under the laws of China, with a place of business located at Building B1, Zhiyuan, Xueyuan Road, Xili, Nanshan, Shenzhen, 518055, P.R.C.  On information and belief, Autel Intelligent Technology Co., Ltd. is responsible for the development of Autel-branded products sold in the United States.  Although Autel Intelligent Technology Co., Ltd. is engaged in business in the State of Texas, it has not designated an agent for service of process in the state. The Texas Secretary of State, therefore, is an agent for service of process for Autel Intelligent Technology Co., Ltd. pursuant to TEX. CIV. PRAC. & REM. CODE § 17.044(b).  Defendant Autel Intelligent Technology Co., Ltd. may be served with processing by serving the Texas Secretary of State, James E. Rudder Building, 1019 Brazos Street, Austin, Texas 78701.

6.      On information and belief, Defendant Autel Robotics USA LLC is a limited liability company organized under the laws of Delaware. Defendant Autel Robotics USA LLC's registered agent for service of process in Texas is Registered Agents, Inc., 5900 Balcones Dr., Suite 100, Austin, TX 78731.

7.      On information and belief, Defendants Autel Intelligent Technology Co., Ltd. and Autel Robotics USA LLC operate as a single entity under the name "Autel."

### III. JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the Patent Laws of the United States, in particular 35 U.S.C. §271, 281, 283, 284, and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 1338(a).

9.      Upon information and belief, Defendants transact substantial business in the State of Texas and in this District. Defendants, directly and through subsidiaries or intermediaries (including distributors, retailers, resellers and others), have purposefully and voluntarily placed one or more of their infringing products, as described below, into the stream of commerce with the expectation that these infringing products will be purchased and used by customers in the District. Defendants have committed acts of patent infringement within the District.

10.     This Court has personal jurisdiction over Defendants because they have committed acts giving rise to this action within the State of Texas and within this District. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum with respect to both general and specific jurisdiction.

11.     This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 et seq. General personal jurisdiction exists over Defendants because Defendants have minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specific personal jurisdiction exists because Defendants have, at least, committed the tort of patent infringement within Texas and this district. Personal jurisdiction also exists because, on information and belief, Defendants have: (1) operated the Internet websites, https://autel.com/us/ and https://www.autelrobotics.com/, which are available to and accessed by users, customers, and

potential customers of the Defendants within this judicial district; (2) sold Defendants' drone and drone-related products within this judicial district; (3) transacted business within the State of Texas; (4) actively infringed and/or induced infringement in Texas; (5) established regular and systematic business contacts within the State of Texas; and (6) continue to conduct such business in Texas through the sale of Defendants' drone and drone-related products. Accordingly, this Court's jurisdiction over the Defendants comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendants' purposeful minimum contacts with the State of Texas.

12.    This Court also has personal jurisdiction over Defendants because, on information and belief, Autel and its authorized resellers (or those acting on their behalf) and Autel's customers committed and continue to commit acts of patent infringement in this judicial district. Defendants transact business within the State of Texas and in this judicial district and have committed acts of patent infringement within the State of Texas and this judicial district as set forth hereinafter. Such business includes, without limitation, Defendants' operation of the Internet websites, https://www.Autel.com/ and https://www.autelrobotics.com/, which are available to and accessed by users, customers, and potential customers of the Defendants within this judicial district, and the sale of Defendants' drone and drone-related products within this judicial district, both online at https://autel.com/us/ and through other official online stores, resellers/retail stores, and varied dealers within this jurisdiction.

13.    In addition to Defendants online stores at https://autel.com/us/ and https://www.autelrobotics.com/, Autel has also targeted this District, including with the Austin Police Department and other strategic partners such as DroneSense.

https://www.police1.com/police-products/police-drones/press-releases/autel-robotics-and-dronesense-partner-to-enable-advanced-public-safety-uas-operations-izIpxSYtvlI4ccuC/

14.     Autel has an established place of business in Austin by way of its strategic partnership with DroneSense.





Austin, TX. & Bothell, WA., November 10, 2020 - Unmanned Aircraft Systems manufacturer, Autel Robotics, and DroneSense, the leading drone software platform for public safety, today announced a partnership that will allow UAS teams to utilize the full suite of DroneSense capabilities tailor-made for the needs of publicsafety operators with their Autel EVO Series aircraft.

https://www.autelrobotics.com/articledetail/454.html

15.     Autel has an established place of business in the State of Texas for its data storage. It stores all of its U.S. customer data on data servers in this State.

Flight Logs



We have improved the accessibility of flight logs within the Autel Sky App, making it easier for our users to access them and send them to our customer service team, should the need arise.

From the Profile menu in the Autel Sky App, select Flight Log, then the clipboard icon in the upper right corner. From there you'll be able to view three different types of logs: Flight Logs, RC Logs, and App Logs.

Select the log menu you want, and you'll be prompted to connect to the drone's Wi-Fi. From there, you can quickly download specific logs straight to your smartphone. At this point, you can upload them to the cloud if our Customer Service or Maintenance team requests them for repairs or service. When uploaded, the files will be stored in a regional server. All customer data in the U.S. is stored on AWS servers in Texas.

https://www.autelrobotics.com/articledetail/1024.html

16.    Autel further targets the State of Texas and this District with advertising campaigns to avail itself of this State and forum.



https://www.autelpilot.com/blogs/news/autel-drones-hands-on-txpxrobotics-summit;

https://www.autelrobotics.com/articledetail/SPOTLIGHT-Getting-Your-UAV-Program-off-the-Ground.html; https://www.statesman.com/story/news/local/bastrop/2022/08/15/bastrop-county-700-acre-pine-pond-fires-cause-under-investigation/65404774007/.

17.     Defendants have also authorized online retailers, as listed at https://autel.com/us/where-to-buy/, and have extended warranties to products purchased from the authorized Autel dealers. Such authorized dealers include those companies listed by Autel and others (e.g., Walmart, Autozone and O'Reilly Auto Parts). Most, if not all, of these online retailers are available to and accessed by users, customers, and potential customers of the defendant within this judicial district (e.g., https://www.walmart.com/browse/electronics/drones/autel-robotics/3944_5525941/YnJhbmQ6QXV0ZWwgUm9ib3RpY3Mie).

18.      Defendants also have designated professional dealers operating in the United States, all of which have online stores through which to sell Defendants' drones and drone-related products, which are available to and accessed by users, customers, and potential customers of Defendants within this judicial district.

19.     On information and belief, Autel maintains a substantial amount of authorized resellers located within the district. This information presented is not wholly representative of all authorized resellers located within the Western District of Texas, but merely demonstrative.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b), (c) because Defendants reside here, because the Defendants collectively operate as a single entity, because Defendant Autel Intelligent Technology Co. Ltd. is not incorporated in the United States, and because Defendants have committed acts of infringement in this judicial district.

## IV.  FACTUAL ALLEGATIONS

<u>Wildcat Licensing Patents</u>

21.     On June 5, 2007, United States Patent No. 7,228,232 ("the '232 patent"), entitled "Navigating a UAV with Obstacle Avoidance Algorithms," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to William Kress Bodin, Jesse Redman, and Derral Charles Thorson, with the International Business Machines Corporation ("IBM") as assignee.

22.     On June 12, 2007, United States Patent No. 7,231,294 ("the '294 patent"), entitled "Navigating a UAV," was duly and legally issued by the USPTO to William Kress Bodin, Jesse J. W. Redman, and Derral C. Thorson, with IBM as assignee.

23.     On October 23, 2007, United States Patent No. 7,286,913 ("the '913 patent"), entitled "Navigating a UAV with Telemetry Through a Socket," was duly and legally issued by the USPTO to William Kress Bodin, Jesse J. W. Redman, and Derral C. Thorson, with IBM as assignee.

24.     On August 26, 2008, United States Patent No. 7,418,320 ("the '320 patent"), entitled "Navigating a UAV Having an On-Board Digital Camera to Capture Desired Geographic Area," was duly and legally issued by the USPTO to William Kress Bodin, Jesse Redman, and Derral Charles Thorson, with IBM as assignee.

25.     The '232, '294, '913, and '320 patents are referred to hereinafter as "the Wildcat Licensing Patents."

26.     Plaintiff Wildcat Licensing LLC is the owner of the entire right, title, and interest in and to the Wildcat Licensing Patents, with the right to sue in its own name. The Wildcat Licensing Patents were initially assigned by IBM to Daedalus Group LLC on or about September

30, 2019. The respective assignments were recorded on November 14, 2019, at the U.S. Patent and Trademark Office.  Daedalus Group LLC then assigned the patents to Wildcat Licensing LLC, on or about January 24, 2020.  The respective assignments were recorded on or about January 29, 2020, at the U.S. Patent and Trademark Office.

27.     Each of the Wildcat Licensing Patents are presumed valid under 35 U.S.C. § 282.

28.     Each of the Wildcat Licensing Patents relate to innovative technology for piloting, controlling, navigating, and optimizing flight missions for unmanned aerial vehicles ("UAV" or "drone").

### United States Patent No. 7,228,232

29.     The '232 patent claims UAV obstacle avoidance technologies that anticipated the future position of the UAV through GPS sequencing and avoid obstacles in dependence of that anticipated future position. Such obstacles may be physical three-dimensional objects such as buildings, mountains, and others that will occur to those of skill in the art; or two and three - dimensional geographic areas such as a no-fly zone. In the present complaint, Defendants' suite of drones and drone-related products infringe on this inventive aspect of the '232 patent. Representative of this infringement is Defendants' Autel EVO II drones. These drones house a GPS module on-board, which transmits UAV location and flight control instructions back and forth from the UAV user's remote-control device, and vice versa. In so doing, the GPS module tracks the UAV location and ensures the UAV is not entering a restricted zone and/or no fly zones. Such interference includes, but is not limited to, decreased speed, takeoff failure, and flight termination.

30.     The '232 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 18-23). Certain of the

inventive aspects of the '232 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 26- 30). More specifically, the inventive aspects of automatically identifying and avoiding obstacles that would otherwise disrupt the flight of the UAV (col. 17, lines 66-67), were not well-understood, routine, or conventional at the time of the invention.  Indeed, during prosecution of the '232 patent, the PTO recognized in an Office Action dated August 25, 2006 that the prior art "does not show or reasonably suggest, in combination with the other claimed subject matter, anticipating the future position of the UAV, identifying an obstacle in dependence upon the future position, selecting an obstacle avoidance algorithm and piloting the UAV using the [selected] obstacle avoidance algorithm." These steps, captured in claim 1 of the '232 patent, were among the inventive concepts of the '232 patent.

### United States Patent No. 7,231,294

31.     The '294 patent claims UAV navigation technologies that maps a UAV's position, from starting position and through waypoints, for a UAV user on a GUI map on a remote-control device. In the present complaint, Defendants' suite of drones and drone-related products infringe on this inventive aspect of the '294 patent. Representative of this infringement is Defendants' Autel EVO II drones, which map the UAVs' position from the start of a mission, through mission waypoints, and to the end of a mission.

32.     The '294 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 17-20). Certain of the inventive aspects of the '294 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 24- 28). More

specifically, the inventive aspects of automatically selecting waypoints using a mouseclick or joystick button click, to control the flight path of the UAV (col. 1, lines 33- 36), were not well-understood, routine, or conventional at the time of the invention. Moreover, the ability to upload multiple waypoints enabled more complex missions to be performed with just a few keystrokes or mouseclicks on the remote control device (col. 1, lines 57-59 and col. 2, lines 2-4), which was also not well-understood, routine, or conventional at the time of the invention.   Indeed, during prosecution of the '294 patent, the PTO recognized in a Notice of Allowance dated February 7, 2007, that the '294 patent made "a significant improvement in [the] UAV field." The PTO also recognized that "receiving in a remote control device a user's selection of a GUI map pixel that represents a waypoint for UAV navigation, the pixel having a location on the GUI" and "mapping the pixel's location on the GUI to Earth coordinates of the waypoint" were not performed in the conventional systems of the prior art. These are among the inventive concepts of the '294 patent, and are captured in the steps of claim 1.

**United States Patent No. 7,286,913**

33.    The '913 patent claims UAV navigation technologies for downlink telemetry of the UAV to the user's remote-control device, which then uplinks telemetry and flight control instructions to the UAV through a socket. Here, a socket is an end-point of a two-way communication link between two application programs running on a network. This communication link pairs the user's remote-control device, or controller, with the drone or UAV to enable the user to operate the UAV.  In some instances, a socket on a UAV would be considered a server-side socket, and a socket on a remote-control device may be considered a client socket. In the present complaint, Defendants' suite of drones and drone-related products infringe on this inventive aspect of the '913 patent. Representative of this infringement is Defendants' Autel EVO II drones, which

house a receiver/transmitter on-board, which serves as the server-side socket transmitting downlink telemetry to the UAV user's remote-control device through one or more application programs. Then using the selected remote-control device application, which may serve as the client socket, uplink telemetry and flight control instructions are transmitted back to the UAV.

34.     The '913 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 18-21). Certain of the inventive aspects of the '913 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 25-28). More specifically, the inventive aspects of automatically selecting waypoints using a mouseclick or joystick button click, to control the flight path of the UAV (col. 1, lines 33- 35), were not well-understood, routine, or conventional at the time of the invention.

35.     Moreover, the ability to upload multiple waypoints enabled more complex missions to be performed with just a few keystrokes or mouseclicks on the remote control device (col. 1, lines 64-67 and col. 2, lines 1-2, 10-11), and the use of a socket to facilitate communications between the UAV and the remote control device (col. 2, lines 34-37), were also not well-understood, routine, or conventional at the time of the invention.

### United States Patent No. 7,418,320

36.     The '320 patent claims UAV navigation technologies including the use of an-board digital camera.  The system of FIG. 1 typically is capable of calculating a heading in dependence upon the starting position, the coordinates of the waypoint, and a navigation algorithm, identifying flight control instructions for flying the UAV on the heading, and transmitting the flight control instructions from the remote control device to the UAV (col. 5, lines 48-53).

37.     Representative of this infringement is Defendants' Autel EVO II drones, which house a digital camera on-board which is used for purposes of navigation.

38.     The '320 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 18-21).

39.     In certain embodiments, the system identifies areas not captured by an onboard camera and extrapolating an area to be carried out by determining an area captured by the onboard camera, extrapolating the area captured by the onboard camera along the flying pattern to determine a perimeter of uncaptured geographic area, and determining the area of the uncaptured geographic area in dependence upon the perimeter. Identifying a geographic area not captured by the digital camera while the UAV is flying in a current flying pattern may also be carried out by determining a gap in camera coverage between the camera coverage of the on-board camera of the UAV in the current flying pattern and a camera coverage of another onboard camera of another UAV in another flying pattern (col 1, lines 41-52).

### DEFENDANTS' ACTS

40.     Defendants collectively operate as a provider of drone products and solutions and provides hardware and software directed to drones to their customers in the United States, including in this District.

41.     On information and belief, Defendants design, develop, support, and coordinate the importation into the United States of the exemplary accused products set forth below.

42.     For example, Defendants' Autel EVO II Drones (or "UAVs") include obstacle avoidance system to avoid obstacles in the drone's way as it navigates.

● **Dynamic Tracking**

Using deep learning algorithms, dynamic tracking can detect six objects in real time: walking persons, persons who ride bicycles, moving cars, trucks, ships, and animals. Real-time tracking algorithms can automatically track selected objects and let the aircraft avoid obstacles in its flight path. This feature uses three modes to track objects.

https://www.vertigodrones.com/assets/images/EVOIIEnterpriseV3UserManual-EN.pdf

43.    The   Accused   Products   also   include   a   GPS   receiver.   *See,   e.g.,*

https://www.vertigodrones.com/assets/images/EVOIIEnterpriseV3UserManual-EN.pdf

44.    Autel drones determine the flight Plan using the GPS receiver and identify anticipated obstacles along the determined flight route.

45.    Autel drones include a GPS receiver. In order to navigate towards the destination point, Autel drones determine the flight Plan using the GPS receiver and identify anticipated obstacles along the determined flight route.

46.    The Accused Products correct a trajectory to avoid obstacles.

## 360° Obstacle Avoidance

Autel Robotics EVO II Dual 640T V3 is equipped with 19 groups of sensors including 12 visual sensors, the main camera, ultrasound, IMUs and other sensors enable building of three-dimensional maps and path planning in real time.

https://www.autelpilot.com/collections/autel-evo-ii-640t/products/autel-robotics-evo-ii-dual-640t-rtk-v3-enterprise-bundle

47.    Defendants instruct their customers in how to operate the Accused Products in an infringing   manner,   including   by   way   of   Owner's   Guides.   *See,   e.g.,*

https://www.autelpilot.com/blogs/support/tagged/manuals;

https://www.autelrobotics.com/download/83.html.

48.     On information and belief, Defendants incorporate hardware components and computer code to practice the claimed method.  Also on information and belief, Defendants cause to be executed or directs or controls the Accused Products to execute that code and other computerized instructions to initiate, configure and carry out the claimed methods.

49.     But for Defendants including this code and the execution of this code by or at the direction or control of Defendants, no infringement would occur. Defendants thus control the timing and performance of the claimed methods.

50.     On information of belief, Defendants also implement contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its software.

51.     Moreover, on information and belief, Defendants implement technical precautions to attempt to thwart customers who would circumvent the intended operation of Defendants' products.

## V.  COUNTS OF PATENT INFRINGEMENT

COUNT ONE
INFRINGEMENT OF U.S. PATENT NO. 7,228,232

52.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

53.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '232 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

54.     Exemplary infringing products include Autel EVO II drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'232 Exemplary Infringing Products"). On

ORIGINAL COMPLAINT
-15-

information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendants were directly infringing each and every element of at least claim 1 of the '232 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling, and offering for sale methods and articles infringing one or more claims of the '232 Patent. Defendants are thus liable for direct infringement of the '232 Patent pursuant to 35 U.S.C. § 271(a).

55.     The '232 Exemplary Infringing Products implement the claimed obstacle detection and avoidance, as set forth above and in the excerpts from Defendants' technical manuals.

56.     On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '232 Patent, either literally or equivalently, including actively and knowingly inducing infringement of the '232 Patent under 35 U.S.C. § 271(b). Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendants know or should know infringe one or more claims of the '232 Patent. Defendants instruct and encourage customers to make and use the patented inventions of the '232 Patent by operating Defendants' products in accordance with Defendants' instructions and specifications. Defendants specifically intend its customers to infringe by implementing obstacle avoidance through obstacle identification and piloting of the UAV in accordance with claimed avoidance algorithms.

57.     On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license

from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '232 Patent, including contributory infringement of the '232 Patent under 35 U.S.C. § 271(c) and/or § 271(f), either literally and/or under the doctrine of equivalents. Defendants' contributory infringement includes without limitation, Defendants' offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '232 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or know to be especially made or especially adapted for use in infringement of the '232 Patent. Defendants specifically intend its customers to infringe by implementing access control lists for filtering and dropping of packets implemented at the ingress port for egress pass/drop determination, as set forth above and in the excerpts from Defendants' technical manuals.

58.     On information and belief, Defendants' customers deploy the accused products on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified as those systems are made available for inspection and review by Wildcat Licensing.

59.     As a result of Defendants' infringement of the '232 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT TWO
INFRINGEMENT OF U.S. PATENT NO. 7,231,294

60.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

61.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '294 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

62.     Exemplary infringing products include Autel EVO II drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'294 Exemplary Infringing Products"). On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendants were directly infringing each and every element of at least claim 1 of the '294 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling, and offering for sale methods and articles infringing one or more claims of the '294 Patent. Defendants are thus liable for direct infringement of the '294 Patent pursuant to 35 U.S.C. § 271(a).

63.     The '294 Exemplary Infringing Products implement selection and implementation of flight path waypoints in the manner claimed.

64.     On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '294 Patent, either literally or equivalently, including actively and knowingly inducing infringement of the '294 Patent under 35 U.S.C. § 271(b). Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendants know or should know infringe one or more claims of the '294 Patent. Defendants instruct and encourage customers to make and

use the patented inventions of the '294 Patent by operating Defendants' products in accordance with Defendants' instructions and specifications. Defendants specifically intend its customers to infringe by implementing selection of waypoints using the GUI, mapping the pixels location to earth coordinates, communicating waypoint coordinates and piloting the UAV in the manner claimed.

65.   On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '294 Patent, including contributorily infringing the '294 Patent under 35 U.S.C. § 271(c). Defendants' contributory infringement includes without limitation, Defendants' offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '294 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or knows to be especially made or especially adapted for use in infringement of the '294 Patent.

66.   On information and belief, Defendants' customers deploy the accused products on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified as those systems are made available for inspection and review by Wildcat Licensing.

67.   As a result of Defendants' infringement of the '294 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT THREE
INFRINGEMENT OF U.S. PATENT NO. 7,286,913

68.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

69.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '913 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

70.     Exemplary infringing products include Autel EVO II  drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'913 Exemplary Infringing Products"). On information and belief, at least since the release of the '913 Exemplary Infringing Products and until the expiration of the '913 Patent, without authorization or license from Wildcat Licensing, Defendants were directly infringing each and every element of at least claim 1 of the '913 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '913 Patent. Defendants are thus liable for direct infringement of the '913 Patent pursuant to 35 U.S.C. § 271(a).

71.     The '913 Exemplary Infringing Products implement selection and implementation of flight path waypoints in the manner claimed, as set forth above and in the excerpts from Defendants' technical manuals.

72.     On information and belief, at least since the release of the '913 Exemplary Infringing Products and until the expiration of the '913 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least

claim 1 of the '913 Patent, including contributorily infringing the '913 Patent under 35 U.S.C. § 271(c). Defendants' contributory infringement includes without limitation, Defendants' offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '913 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or knows to be especially made or especially adapted for use in infringement of the '913 Patent.

73.     As a result of Defendants' infringement of the '913 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FOUR
INFRINGEMENT OF U.S. PATENT NO. 7,418,320

74.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

75.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '320 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

76.     Exemplary infringing products include Autel EVO II drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'320 Exemplary Infringing Products"). On information and belief, at least since the release of the '320 Exemplary Infringing Products and until the expiration of the '320 Patent, without authorization or license from Wildcat Licensing, Defendants were directly infringing each and every element of at least claim 1 of the '320 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for

testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '320 Patent. Defendants are thus liable for direct infringement of the '320 Patent pursuant to 35 U.S.C. § 271(a).

77.     The '320 Exemplary Infringing Products implement on-board digital cameras, as set forth above and in the excerpts from Defendants' technical manuals. Rectangular and polygon missions are flown wherein the aircraft flies in a route suitable for collecting orthophoto data. During flight, the remote controller streams real-time images to Autel Mapper for real-time 2D stitching. Advanced image processing algorithms are used to generate high-precision 2D orthophoto images in real time, providing the on-site operators with a basis for adjusting the workflow in a timely manner.

78.     On information and belief, at least since the release of the '320 Exemplary Infringing Products and until the expiration of the '320 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '320 Patent, including contributorily infringing the '320 Patent under 35 U.S.C. § 271(c). Defendants' contributory infringement includes without limitation, Defendants' offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '320 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or knows to be especially made or especially adapted for use in infringement of the '320 Patent.

79.     As a result of Defendants' infringement of the '320 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## VI.    JURY DEMAND

80.    Plaintiff Wildcat Licensing demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Wildcat Licensing prays for judgment and seeks relief against Defendants as follows:

A.    That the Court determine that one or more claims of the Wildcat Licensing Patents is infringed by Defendants, either literally or under the doctrine of equivalents;

B.    That the Court award damages adequate to compensate Wildcat Licensing for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement; and

C.    That the Court award such other relief to Wildcat Licensing as the Court deems just and proper.

DATED: June 13, 2023                    Respectfully submitted,

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Christopher V. Goodpastor
Texas State Bar No. 00791991
cgoodpastor@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

*ATTORNEYS FOR PLAINTIFF*